*Partnership — a new firm the successor of a prior firm — liability for consigned goods converted by the old firm.*

A special partnership, organized as the successor of an individual who had conducted business under a firm name, is not liable for the debt of its predecessor on account of goods previously consigned to him for sale on commission, where the goods were hypothecated by him and thus converted, and neither the goods nor any of the moneys received upon such hypothecation ever came into the possession of the new firm, and neither the new firm nor the new (a special) partner ever agreed to assume the liabilities of the old firm or to guarantee the payment of its debts.

Such new firm will not be bound by a stock account rendered, after its formation, to the consignor of goods hypothecated by its predecessor, indicating the possession by the new firm of the goods which had been hypothecated, but which is in fact a false and unauthorized statement made by the general partner who was the predecessor in the business of the new firm, without the knowledge of the special partner; nor will the new firm be estopped thereby from showing that the goods were not in its possession and never had been.

Declarations made prior to the formation of a firm, by a person who becomes a special partner in the firm on its formation, have no binding effect upon the firm, then only in contemplation.

Acceptances given by a firm, which fall due after the formation of a new firm as its successor and are paid by the new firm as a payment *pro tanto* upon a debt of the old firm, cannot thereafter be credited on an indebtedness of the new firm.

APPEAL by the claimants, Rawitser & Brother, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the city and county of New

York on the 30th day of November, 1891, confirming the report of a referee to whom the disputed claim of Rawitser & Brother against Thomas F. Ryan, as receiver of the firm of C. A. Wyatt & Co., a limited partnership, was referred to hear and determine.

The facts appear from the following portion of the opinion of the referee, William N. Armstrong, Esq. :

"For some time previous to November 1, 1888, C. A. Wyatt did business as a commission merchant under the name of C. A. Wyatt & Co. He had, however, no partner. Rawitser Brothers had from time to time consigned goods to him, the value of which, about November 1, 1888, was over $40,000. The agreement between the consignor and consignee was that the latter should sell the goods and return the proceeds to the consignor, deducting from the sales the amount of his commissions. He had no power to make any other disposition of them than to sell and return the proceeds. It appears, however, that instead of selling all of the goods so consigned, he hypothecated them with the firm of Linde & Co., received advances upon them, and made no mention of this fact to the consignors. The sums obtained by hypothecation he used for his own purposes, and did not remit them to the consignors.

" This disposition of the goods was an act of conversion.

" An agent intrusted with property to sell is liable for conversion if he sells and violated the orders of his principal. (*Comley* v. *Dazian*, 114 N. Y. 161 ; citing *Seyds* v. *Hay*, 4 T. R. 260, where it is said that 'it is conversion for one who is intrusted with the goods of another, to put them into the hands of a third person, contrary to orders.' Also, *Laverty* v. *Snethen*, 68 N. Y. 522.) Rawitser Brothers neither authorized thic disposition of the goods or confirmed his acts when they were informed of them.

" On November 1, 1888, Wyatt formed a partnership with Newhall, the latter becoming under the statute a special partner, with $50,000 capital, and the firm name was C. A. Wyatt & Co. It continued the business of commission merchants as carried on by C. Wyatt, until February, 1889, when it failed, and Wyatt disappeared.

" Rawitser Brothers continued to consign goods to the new firm in the same manner as they had consigned to Wyatt before November 1, 1888, when Wyatt did business under the name of C. A. Wyatt & Co.

" A receiver having been appointed of the assets of C. A. Wyatt & Co., Rawitser Brothers present a claim of $62,000 against the firm, which is disputed both by the receiver on behalf of the other creditors, and by the special partner, Newhall, on the ground that the claim of Rawitser Brothers is only valid, to a large extent, against C. A. Wyatt individually, and that the firm of C. A. Wyatt & Co. cannot be held responsible for it.

" It is claimed by Rawitser Brothers that the new firm of C. A. Wyatt & Co. assumed to pay the obligations of Wyatt contracted by him before November 1.   The receiver, on the other hand, claims that no such assumption was ever made either in fact or in law.

" In the month of September, previous to the formation of the new firm, Mr. Louis Rawitser testifies that he saw Mr. Newhall, and in several conversations the latter informed him that he was about to join the firm of C. A. Wyatt & Co., with $50,000 capital, and that he, in reply to a statement of Rawitser that his firm had large quantities of goods in Wyatt's hands, replied that all would be quite safe; that all was straight; they should go right along and not lose anything; that there was a great deal of money back of the concern; that the new concern would take the old firm's business, in the same way in which the old firm had been doing the business; take the accounts, the merchandise and everything; that upon the further statement of Mr. Rawitser that his firm had consigned goods to Wyatt amounting in value to $40,000 or $50,000, Newhall replied that this would be taken care of.   In addition to this evidence, it appears that Wyatt & Co., the new firm, rendered an account to Rawitser Brothers on December 31, 1888, in which the goods consigned to Wyatt previous to November 1, appeared as goods then on hand.

" Neither Rawitser Brothers, nor, so far as the testimony shows, did Newhall know at the time of this conversation in September, that Wyatt had converted the goods consigned to him, nor would this conversation have taken place if either of them had been aware of Wyatt's acts.

" The conversation assumed that the goods consigned by Rawitser were properly taken care of by Wyatt, and it referred generally to what the course of business would be under the new firm.   At that time the new firm had not been formed.   Newhall could not bind it

in any way as a new firm.   If the firm had then been formed, New-hall, as a special partner, could not transact any business on account of the firm, or be employed to transact business as an agent, attorney or otherwise.   (Sec. 17, chap. 414, Laws of 1857.)   The promise which the consignors now claim is binding on the new firm was a promise by a person, proposing to become thereafter a special partner in a firm, that the firm would, when organized, assume the debts and obligations of a person who proposed to become the general partner of the firm.   Such a promise would not bind the firm, as there was no authority to make it ; and none could be given because the firm did not exist.   If it was a valid obligation, it was in the nature of a guaranty by Newhall that the new firm would assume the obligations of Wyatt, and such a promise is required to be in writing, and no writing to that effect exists.

" As Wyatt had already converted Rawitsers' goods, the promise, if made, was, in legal effect, an agreement that the new firm would pay to Rawitsers the value of the goods converted by Wyatt.   If the firm had been in existence, such a promise made by a general partner would not be binding on the firm, as it would not be within the scope of the partnership business, unless a sufficient considera-tion appeared.

" It is not necessary to consider the exact nature of the agreement between Rawitser and Newhall in September, because if one was made, as claimed by Rawitser, it was void for want of an instrument in writing.   Both parties were in ignorance of the facts as they existed at the time of the conversations, and both parties evidently assumed a condition of things which did not exist.

" It is also claimed by Rawitser Brothers that the rendering of an account to them by the new firm in December, 1888, in which the goods consigned to Wyatt, and converted by him before the new firm existed, were declared to be on hand, was, in fact, an agree-ment by the new firm to assume the payment of Wyatt's obligations.   This account does not, in words, state that the firm agreed to pay these obligations.   It is a statement that Wyatt & Co. are in the possession of the goods, and hold them for the account of the con-signors.   As Wyatt was the only general partner, it is to be pre-sumed that he directed it to be made out and sent.   It did not state the truth, because not only the goods consigned to him individually

First Department, June Term, 1893.          [Vol. 70.

had been hypothecated, but those consigned to the new firm had been disposed of in the same way. He certainly could not bind the firm to assume the payment of the value of goods which he had individually converted. It was not within the scope of the partnership business. There is no proof, or offer of proof, that Newhall, as special partner, knew of the rendering of this account. If he had been a general partner, some presumption might possibly arise that he had knowledge of the act. But no such presumption would arise in the case of a special partner who was excluded by law from any active interest in the business. Nor can the account so rendered by the firm be construed into a guaranty of Wyatt's individual obligations. I am, therefore, of the opinion that the claim of Rawitser Brothers should be disallowed, so far as it included the value of the goods consigned to Wyatt before November 1, 1888."

The claim of Rawitser & Brother included goods which had been consigned to the new firm, as well as those consigned to the old firm. The referee found that the new firm had paid the claimants $12,500, on account of goods consigned to it, and that there remained due from it to the claimants the sum of $15,729.41.

The fourth point made by Mr. Horwitz, the claimants' attorney, referred to in the following opinion, was as follows :

" The exception to finding No. 22, that the new firm of C. A. Wyatt & Company has paid to Rawitser & Brother the sum of $12,500, is well taken, and the order confirming the report should be reversed upon this exception. The referee found that the new firm of C. A. Wyatt & Company had paid to the firm of Rawitser & Brother the sum of $12,500 on account of the indebtedness of that firm to the firm of Rawitser & Brother. This is an error, as there is no evidence showing that any such sum was paid by the new firm on account of any indebtedness contracted by it and due by it to the firm of Rawitser & Brother. What the evidence does show is that five acceptances or drafts made by the old firm of C. A. Wyatt & Co. at different periods prior to the 1st day of November, 1888, upon four months' time, which acceptances, and each and every of them, matured after the 1st day of November, 1888, were taken up and paid after the formation of the new firm of C. A. Wyatt & Company and credited

upon the old account due to Rawitser & Brother. This appears from the testimony of Louis F. Rawitser upon cross-examination by counsel for the receiver. In answer to a question as to the amount that his firm actually realized on drafts given by the firm of C. A. Wyatt & Company that were neither renewed nor paid by Rawitser & Brother the witness answered as follows : ' The number, date and amount of each of the acceptances which were paid by Wyatt & Co. from January first up to date are these : There was paid on June 6th, $2,500 ; June 12th, $2,500 ; July 1st, $2,500 ; July 6th, $2,500 ; July 17th, $1,650 ; July 20th, $1,700 ; July 24th, $1,650 ; September 17th, $2,500 ; September 24th, $2,500 ; *November 16th, $2,500 ; November 23d, $2,500 ;* May 10th, $2,339.25 ; May 17th, $2,078.63 ; May 23d, $1,882.12, and a note of Nowell & Presby, due June 7th, $1,527.84 ; *January 15th, 1889, he paid $2,500 ; January 21st, $2,500 ; February 7th, $2,500.* Then he decamped and paid no more.'

" ' Q. Go back over this same list again of acceptances that have been paid by Wyatt & Co., of which you have received the benefit, and give me a date when they were made or received by you ?

" ' A. February 3d, 9th, 28th. February 3d that is five months' time. March 14th, 17th and 21st. May 14th, 21st. July 13th, 20th. January 7th, 14th, 20th, 1888. September 12th, 18th. October 4th. I don't know how they were paid. The bank paid them. They were none of them renewed, and all of them paid on account of goods consigned to Wyatt & Co.'

" This testimony is undisputed and indisputable, and establishes beyond doubt that the dates of the five acceptances are all prior to November 1, 1888 ; that they were given by the old firm for the old firm's business, but happened in the ordinary course of events to mature and be paid after the formation of the new partnership.

" In addition to this testimony, by a reference to Exhibit No. 14, it further appears that on July 25th two acceptances at four months' time were given, dated respectively July 13th and July 20th, for $2,500, each of which acceptances matured respectively on November 16th and November 23d, 1888. On September 18th two more acceptances are credited to the account of Wyatt & Co., dated September 12th and September 18th, having four months to

run, due January 15th, 1889, and 21st, 1889, respectively, each acceptance being for the sum of $2,500, and on October 12th another acceptance is credited to the account of Wyatt & Co., dated October 4th at four months, due February 7th, 1889, also for the sum of $2,500. It, therefore, appears that these five acceptances, aggregating in amount $12,500, which were paid after the formation of the new firm of C. A. Wyatt & Co., were acceptances given by C. A. Wyatt individually, for goods consigned to the old firm of Wyatt & Co. prior to November 1st, 1888, and sold by that firm, and that these acceptances, though they did fall due after the formation of the new partnership, and were paid as they matured by the new partnership, were not paid for any indebtedness of the new partnership to the firm of Rawitser & Brother. The referee, in allowing this payment as a payment of the new firm, was evidently misled by the fact that these acceptances matured after the formation of the new partnership, and were paid by the new partnership in settlement of a debt contracted by the old firm and due by the old firm, and overlooked the fact that they had nothing whatsoever to do with any indebtedness of the new firm to the firm of Rawitser & Brother. There was nothing in the testimony to show that the new firm paid a dollar for any of the consignments sent by Rawitser & Brother to it. A further reference to Exhibit No. 14 will show that all acceptances given by the new firm for goods consigned to it were the following : One acceptance on November 13th, dated November 9th, due March 12th, 1889 ; one acceptance dated November 12th, due March 15th, 1889 ; one acceptance dated December 1st, due April 4th ; one acceptance dated December 5th, due April 8th ; each for $2,500. These acceptances all matured after the 1st of February, 1889, which was the date on which Wyatt disappeared, and after which date nothing was paid.

" This sum of $12,500, which the referee finds to have been a payment by the new firm on account, is shown by reference to Exhibit No. 14, to have been charged to the account of Rawitser & Brother in the account current, and, after allowing the same, the balance in favor of C. A. Wyatt & Co. is shown to be $28,734.69. This account, according to the testimony of Rawitser, 'does not contain any credit due us for the merchandise on hand; that remains still to be credited as against this balance; no part of the item of

merchandise sold by our firm to C. A. Wyatt & Co. enters into this account at all; that is purely the credits and debits on the consignment account for moneys paid to our firm on the one side, and sales reported to our firm for our consigned goods on the other side; moneys and acceptances by our firm; that is, C. A. Wyatt & Co.'s acceptances of our drafts.   It has reference only to consigned goods disposed of, and undisposed consigned goods do not in any way at all enter into that account.'

"Furthermore, the claim of Rawitser offered in evidence at the reference marked 'Exhibit A,' August 31st, 1891, gives Wyatt & Co. due credit for this sum of $28,734.69, leaving a balance due to Rawitser & Brother, as appears by that exhibit, of $62,418.38. Rawitser & Brother credited to the old firm this amount of $28,734.69, took it off the old account, as is shown by 'Exhibit A,' and made it no part of their claim, yet the referee, by the error he has made, in charging the $12,500 paid after November 1st, 1888, though given for merchandise consigned to the old firm and given by the old firm, is in reality charging this $12,500 against Rawitser & Brother a second time.   In finding No. 21 the referee finds that Rawitser & Brother have been paid by both firms upon account of the claim made in this proceeding the sum of $16,234.69.   He arrives at this conclusion in the following manner: He finds that a balance is due from Rawitser & Brother of $28,734.69, as is shown by Exhibit 14.   He credits the new firm with a payment of $12,500 of this amount, and he credits both firms with the difference, which, in exact figures, is $16,234.69.   He again falls into the error of charging this sum of $16,234.69 as a credit to both firms; whereas, the sum is an offset against the old firm only, and not against the new firm's account.   In allowing the firm of Wyatt & Co. a credit of $28,734.69, Rawitser & Brother have given Wyatt & Co. a credit for $16,234.69 and for this $12,500.

"These errors are all mathematical errors, and are capable of precise demonstration to be such errors, as an examination of the figures enumerated by us will disclose, and the reference to the figures on the exhibits as pointed out by us will conclusively confirm.

"The referee has fallen into these errors by being confused by the dates of the maturity of the five acceptances already spoken of,

FIRST DEPARTMENT, JUNE TERM, 1893. [Vol. 70.

which all matured after the 1st day of November, 1888, but which were dated at different dates, long prior to November 1, 1888. In thus disregarding the dates when the drafts were dated and given, as shown by the evidence, and as shown by the exhibits, he has lost sight of the fact that these drafts were all given for consignments made prior to the formation of the new partnership, given in the usual way on four months' time, and did not mature until after the formation of the new partnership.

" The referee finds that there is now due from the new firm of C. A. Wyatt & Co. to Rawitser & Brother on account of the claim filed with the receiver, the sum of . . . . . . . . . . . . . . . . . . . . . . . .    **$15,729 41**

" With interest from January 1, 1889. He arrives at this sum in the following way : He finds that there is due from the new firm of C. A. Wyatt & Co. for goods consigned after November 1, 1888, the sum of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $12,727 62

" He further finds that there is due for a bill of overcoatings sold to the new firm the sum of . . . .    14,010 66

" He finds that there is due for goods consigned and sold in January by the new firm the sum of . . . . .    1,432 76

" And the further sum of . . . . . . . . . . . . . . . . . . . . . .    58 37.

" Which makes a grand total of . . . . . . . . . . . .    $28,229 41

" Of this amount he credits Wyatt & Co., erroneously, of course, as we have already demonstrated, with the sum of . . . . . . . . . . . . . . . . . . . . .    12,500 00

" Leaving a net balance due, according to the referee's figures, of . . . . . . . . . . . . . . . . . . . . . .    **$15,729 41**

" It, therefore, appears that according to the referee's own conclusions and findings that there has been an error made by him to the extent of more than $13,000, and that the claim of Rawitser & Brother should be, according to the referee's findings and own figures, as follows : For

goods consigned by Rawitser & Brother to the
new firm of C. A. Wyatt & Co. after November
  1, 1888..................................       $12,727 62
"For the overcoating bill sold to the new firm after
  November 1, 1888.........................     14,010 66
"For goods reported as sold in the month of Janu-
  ary, 1889.................................      2,828 55
"And for a bill of January 4, 1889.............        58 37

   "Which makes a grand total of............     $29,625 20"

The facts relating to this receivership appear very fully in *Clark*
v. *C. A. Wyatt & Co.* (68 Hun, 1).

*Otto Horwitz*, for the claimants-appellants.

*Durnin & Hendricks*, for Ryan, receiver.

*Kellogg, Rose & Smith*, for Henry G. Newhall.

BARRETT, J.:

But little need be added to the opinion of the learned referee in
this matter.   Upon the main question his findings of fact are justi-
fied by the evidence, and his conclusions of law are properly
deducible from the facts so found.

We think it clear that the claim made by Rawitser & Brother
against the special partnership is not sustained.   A discussion of the
abstract question, when and under what circumstances a new firm
organized as the successor of an existing firm will be held liable for
the debts of its predecessor, would be quite unprofitable.

For, upon the facts, there is no basis for the application of any
known rule of law under which the present claim could possibly be
sustained.   The referee has found that neither the new firm nor the
new partner ever agreed to assume the liabilities of the old, or to
guarantee the payment of its debts; that the goods which the
claimants had consigned to the old firm never came into possession
of the new; that such goods were hypothecated by the old firm and
thus converted; and that none of the moneys which were received

by the old firm upon such hypothecation ever came into the possession of the new. These facts are conclusive against the present claim in any view of the law.

The claimants rely mainly upon the fact that, after the formation of the new firm, a stock account was rendered to them indicating the possession by the new firm of the very goods which had been previously hypothecated. This, however, was nothing more than a false and unauthorized statement made by the general partner without the knowledge of the special partner. The firm was certainly not bound thereby. Nor was it estopped from showing the real fact, which was that the goods were not in its possession and never had been.

Some loose declarations of the special partner, Mr. Newhall, made prior to the formation of the new firm, were also given in evidence, but they were far from constituting a contract or agreement, even individually, to guarantee or become responsible for the debts of the old firm. They could have no binding effect upon the new firm, which was then only in contemplation. Mr. Newhall could not then contract on its behalf and he did not profess to do so.

Upon the main question the order is clearly right and should be affirmed.

We think, however, that the learned referee erred in deciding that the new firm paid to the claimants the sum of $12,500, for which it should have credit. Without going over the figures and testimony in *extenso*, we think it apparent that the learned referee was misled by the fact that five acceptances which were given by the old firm, but which fell due after the formation of the new, were paid by the new. These acceptances were the obligations of the old firm and not of the new. Their payment, therefore, was a payment *pro tanto* of the debt of the old firm, and was not a payment made by the new on account of its own obligations and conceded indebtedness. We think Mr. Horwitz has clearly and ably demonstrated this in his fourth point.

But we do not agree with Mr. Horwitz' analysis of the referee's twenty-fifth finding, and we find nothing in the evidence nor in the finding itself to justify his criticism thereupon.

The report should be modified by finding that Rawitser & Brother have proved their claim against the assets in the hands of the

receiver to the amount of $28,229.41, and, as so modified, it should be affirmed, without costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Order modified as directed in opinion, and, as modified, affirmed, without costs.